UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:18-cr00296 (JAM) |
| | : | |
| v. | : | |
| | : | |
| ROCKY SAMAS | : | July 2, 2020 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

This Court is scheduled to sentence the defendant, Rocky Samas on July 7, 2020, following guilty verdicts on both counts of the two-count Indictment that charged him with Possession with Intent to Distribute Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) and Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The Government submits this memorandum for the Court's consideration in aid of sentencing.

**I.   BACKGROUND**

    **A.   Procedural Background**

On December 11, 2019, after trial, Hon. Jeffrey A. Meyer, U.S.D.J., presiding, a jury convicted Mr. Samas of both counts of the two-count Indictment.

    **B.   Underlying Facts and Relevant Conduct**

Controlled Purchases of Crack Cocaine (Relevant Conduct)

The DEA, working with members of the Stamford Police Department, conducted three controlled purchases of crack cocaine from SAMAS during 2018. Those operations were conducted at DEA's direction by a confidential source (CS-1) working for judicial consideration in a pending criminal matter. Stamford Police had

received reliable information from CS-1 in connection with prior investigations, and found CS-1 to be reliable. CS-1 had also testified as a cooperating witness in the District of Connecticut and CS-1's testimony was deemed truthful and reliable.

With respect to Mr. Samas, CS-1 reported that Mr. Samas, whom CS-1 also knew as "Twin," was a crack cocaine supplier from whom he had purchased crack cocaine in the past. Investigators' confirmed Mr. Samas' identity by reviewing his criminal history, state identification, and booking photographs.

The DEA conducted three controlled purchases of between 12 and 14 grams of crack cocaine from Mr. Samas. Each of the controlled purchases was conducted using all controlled purchase protocols, including contraband searches, prerecorded funds, the use of recording devices, and coordinated law enforcement surveillance. In each case, the contraband recovered field-tested positive, and later lab-tested positive, for the presence of cocaine base. Further, each of the controlled purchases took place in or around Mr. Samas' residence in Bridgeport. Those controlled purchases formed the basis of the Government's successful application for a criminal complaint and arrest warrant and a search warrant for his home.[1]

---

[1] The Government did not charge these controlled purchases in the Indictment. As indicated in the criminal complaint, based on information provided by Stamford Police and Connecticut State Police conducting surveillance at Mr. Samas' residence, the Government is aware that in or about October 2018, CS-1 went to Samas' residence without law enforcement authorization.  Notwithstanding the unauthorized events of October 2018, the Government is not aware of any information that would undermine the integrity of the controlled purchase operations discussed herein or the reliability of information provided by CS-1 during the investigation.  Nevertheless, as those transactions were not charged, the Government does not seek to include the quantities of the drugs purchased during the controlled transactions in its Guidelines calculation.  The PSR notes in ¶ 10 that "[t]he Government has advised that it cannot prove by a preponderance of the evidence the weight of the narcotic sold by Mr. Samas during that time period."  To clarify, the Government believes it could prove the weight (specifically, by introducing lab reports and agent testimony) but has chosen not to include those weights in its Guidelines calculation for the reasons set forth above.

The Charged Conduct

The Government introduced evidence at trial in the form of law enforcement witness testimony, physical evidence, and documentary evidence, that established the following facts.

On or about November 6, 2018, the DEA executed a federal arrest and search warrant authorized at Mr. Samas' Bridgeport residence.

Upon entering the residence, Mr. Samas, the sole occupant, was taken into custody without incident. Investigators then conducted a search of the residence, and located several packages of narcotics, two scales, and a large sum of money. Specifically, in a dresser drawer in the main bedroom of the residence, investigators located:

1) 10.1 grams of powder cocaine;
2) 46.5 grams of cocaine base, also known as "crack cocaine"
3) A digital scale
4) $13,955 in U.S. currency

Inside of a large plastic storage bin, investigators located a backpack. Inside the backpack was an additional 109.6 grams of powder cocaine and another digital scale. After investigators advised Mr. Samas of his *Miranda* rights, he admitted that all of the drugs belonged to him.

A query of the Connecticut Department of Labor revealed that Samas had no employment history in the State of Connecticut. This was inconsistent with the large amount of cash that he possessed.

### C. Sentencing Guidelines Calculation

The Government agrees with the PSR's calculation that Mr. Samas has a criminal history score of three and therefore falls within criminal history category of II and that the defendant's base offense level is 24, based upon a calculation of 195.21 kilograms of converted drug weight.

The Government also agrees with the PSR that the two-point reduction for acceptance of responsibility under U.S.S.G. §3E1.1 should not be applied. *See* PSR ¶ 13. Application Note 2 of §3E1.1 states that, "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Although in "rare circumstances" a court may rely primarily upon pre-trial statements and conduct to determine that a defendant demonstrated acceptance of responsibility even after trial, those circumstances do not exist here. Indeed, Mr. Samas maintains his innocence. *See* PSR ¶ 13, Defendant's Memo at 6. He should not receive the two-point reduction for acceptance of responsibility and, for the same reasons, the Government does not move for an additional one-point reduction under §3E1.1(b).

A base offense level of 24 and a criminal history category II yields a guidelines range of 57 to 71 months of imprisonment, which effectively becomes 60 to 71 months of imprisonment because of the applicable mandatory minimum term of imprisonment under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). The applicable guidelines

4

also yield a fine range of $20,000 to $5,000,000, U.S.S.G. §5E1.2(c)(3), and a supervised release term of four years to life.

## II. LEGAL STANDARD

Following the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-245 (2005), which rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the Defendant;" (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the Defendant, and (d) "to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

The Second Circuit reviews a sentence for reasonableness. *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005). The reasonableness standard is deferential

and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *Id*. Here, these factors weigh in favor of a sentence of 60 months of imprisonment and a five-year period of supervised release.

## III. DISCUSSION

In this case, the most significant § 3553(a) factors include a consideration of the nature and circumstances of the offense, the need for specific and general deterrence, and the character and history of the defendant. Applying the sentencing guidelines and the § 3553(a) factors, a sentence of 60 months of imprisonment and a five-year period of supervised release is the sentence that is reasonable, but not greater than necessary, to accomplish the goals of sentencing.

### A. The Nature and Circumstances of the Offense

Distributing significant quantities of cocaine and cocaine base is a dangerous and serious offense. The quantity of cocaine and cocaine base recovered from Mr. Samas' residence demonstrates a flagrant disregard for public safety and willful disrespect of the law. Moreover, Mr. Samas has a lengthy history of violent and dangerous conduct. The instant offense is troublingly similar to a 2004 federal drug distribution conviction and prior state convictions. *See* PSR ¶ 27-30. Mr. Samas' recidivism suggests that he has a sophisticated understanding of the consequences related to the possession of crack cocaine and a reckless disregard for the consequences.

6

In late 2018, Mr. Samas was operating a lucrative drug trafficking business. On three occasions, DEA agents purchased crack cocaine from Mr. Samas using a confidential informant. The execution of the subsequent search warrant -- the basis of the instant charges -- confirmed that Mr. Samas was indeed a prolific drug dealer. At trial, Special Agent Raymond Walcyzk, a 20-year veteran of the DEA, testified about the common pricing for crack cocaine and powder cocaine to a consumer. By the Government's calculation, the powder cocaine and crack cocaine found in Mr. Samas' residence had a street value of more than $16,000. In addition, investigators found nearly $14,000 in small denominations in Mr. Samas' dresser drawer, despite Mr. Samas having no legitimate employment of record in the State of Connecticut. More troubling, perhaps, is that at trial, Mr. Samas falsely asserted that the money found in his residence was the proceeds of his wife's lawsuit settlement from many years prior.

B.   **Character and History of the Defendant**

Mr. Samas reports growing up in a warm and loving home with four siblings. *See* PSR ¶¶ 37-38. He shares close relationships with his three children and stepchildren. *See* PSR ¶¶ 39-40. He reports marijuana and cocaine use from teen years to present with intervening substance abuse treatment support through state and federal probation programs. *See* PSR ¶¶ 43, 45. He continued to abuse illegal drugs even after a serious head injury. *See* PSR ¶ 43. While on pretrial release for this offense, Mr. Samas received inpatient drug treatment.

Mr. Samas has an extensive criminal record. His first federal convictions, three counts of possession with intent to distribute cocaine base, occurred in 2004. Mr. Samas was 32 years old at the time, but had already accrued several serious state felony convictions. He was on state probation at the time of the federal offense. He was originally sentenced to 20 years of imprisonment, but because of changes in the law, was resentenced twice and ultimately served approximately 8 years in prison. The transcript of his final resentencing in 2013 paints a hopeful picture of Mr. Samas' future-- he personally expressed the positive change he experienced while imprisoned and the promise of his return to society. *See* 3:04cr5 (JCH) (Doc. No. 116-1 at pp. 27-34). But reality paints a different picture. Despite serving a substantial period of incarceration from his 2004 conviction, getting married, having a child, obtaining employment, and receiving services from the United States Probation Office, Mr. Samas has not changed his behavior.

A unique characteristic of Mr. Samas' criminal past is that he has been successful on probation and supervised release in the past. During his last period of federal supervised release, Mr. Samas held gainful employment, maintained his sobriety, and refrained from additional criminal conduct. *See* PSR ¶ 30. As a result, the Court terminated his term of supervised release early. Mr. Samas clearly benefitted from the supervision and support of the United States Probation Office. As such, the Government believes that a period of supervised release of 5 years, to begin after his release from imprisonment, would provide Mr. Samas with the support and services necessary for him to live a law-abiding life.

### C. General and Specific Deterrence

It is important for the public to know that repeat drug trafficking offenders will face serious consequences. Trafficking cocaine and cocaine base has indisputable harmful effects on our communities. That fact, in and of itself, makes the offense of conviction serious and worthy of incarceration.

Moreover, there is a need here for specific deterrence. Mr. Samas has multiple felony drug distribution convictions and has spent considerable time imprisoned. *See* PSR ¶¶ 27-30. It is hard, then, to understand what exactly will deter Mr. Samas from future criminal acts. Long periods of incarceration, probation and supervised release did not deter Mr. Samas from continuing to sell dangerous drugs. Such a history of recidivism counsels in favor of a significant period of incarceration.

On the other hand, one hopes that Mr. Samas' 28-year criminal career has reached its end. Since his last conviction, Mr. Samas suffered from a stroke and consequent complications. The effects of that event were evident at trial and have been explored in this Court in more detail in light of the COVID-19 pandemic. Nevertheless, while Mr. Samas' medical conditions are serious, they appear to be of the type that can be appropriately managed by the Bureau of Prisons.[2]

---

[2] The Government does not address the defendant's assertion that he will immediately seek compassionate release upon imposition of the sentence, because such a remedy cannot be accomplished at a sentencing proceeding. Indeed, under 18 U.S.C. § 3582(c), a Court has limited authority to modify a sentence, and can only do so once the sentence has been imposed.

Balancing the significant aggravating factors present in Mr. Samas' history against his recent medical issues, the Government believes that a sentence of 60 months will serve to deter Mr. Samas from future criminal conduct.

### D.     Need for Education and Treatment

The Government has no objection to and encourages Mr. Samas to participate in the occupational educational programs and parenting program recommended in the PSR. Additionally, the Government believes that continued substance abuse treatment will benefit Mr. Samas, as it has demonstrably done in the past.

## IV. CONCLUSION

For the reasons set forth above, the Government believes that a sentence of 60 months of imprisonment, which is the minimum term of imprisonment under applicable law, is sufficient but not greater than necessary to satisfy the objectives of sentencing. The Government requests that Mr. Samas' sentence include a period of supervised release of five years so that he can receive the supervision and support necessary to prevent him from reoffending. The Government hopes this period of imprisonment and supervision will prove an effective and final deterrent from future criminal conduct.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/ Maria del Pilar Gonzalez*
MARIA DEL PILAR GONZALEZ
ASSISTANT U.S. ATTORNEY
Fed Bar No. ct30716
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3747
pilar.gonzalez@usdoj.gov

## **CERTIFICATION**

I hereby certify that on July 2, 2020, a copy of the foregoing was filed electronically with the Court.

                                         */s/ Maria del Pilar Gonzalez*
                                         MARIA DEL PILAR GONZALEZ
                                         ASSISTANT UNITED STATES ATTORNEY